IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01445-WYD-KLM

MICHAEL D. HORNE,
JOSEPH B. BARRERAS,
JERSHAUN JONES,
COREY E. LA MAR, and
DESHAUN LOCKETT, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

SCOTT'S CONCRETE CONTRACTOR, LLC,
LEONA D. SCOTT, and
OCCIA S. SCOTT,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs'[1] **Motion for Entry of Default Judgment**

[Docket No. 20; Filed September 12, 2012] (the "Motion").    The motion is referred to this

Court for recommendation [#27].   In the Motion Plaintiff seeks entry of default judgment

---

[1] In this Recommendation "Plaintiffs" refers to the named Plaintiffs: Michael D. Horne ("Horne"), Joseph Barreras ("Barreras"), Jershaun Jones ("Jones"), Corey E. La Mar ("La Mar"), and Deshaun Lockett ("Lockett").  The Court has found no authority for entry of a default judgment on behalf of a non-party.  "Under [section] 16(b) of [the] FLSA . . . no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class . . ." *LaChapelle v. Owens-Illinois, Inc*, 513 F.2d 286, 288 (5th Cir. 1975); *see also Thompson v. Sawyer*, 678 F.2d 257, 269 (D.C. Cir. 1982).  Here, Plaintiffs filed this action and three additional proposed opt-in plaintiffs seek to join this litigation through Plaintiffs' Motion for Conditional Certification of Collective Action [#12].  However, the Court has not granted such certification.  Therefore, to the extent the Motion seeks entry of a default judgment on behalf of proposed opt-in plaintiffs Leonard P. Streifel, Esteban Villalobos, and Luis Morales, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

against Defendant Scott's Concrete Contractor, LLC ("SCC"); Defendant Leona D. Scott ("L. Scott"); and Defendant Occia S. Scott ("O. Scott").  Defendants SCC and L. Scott have not appeared in this matter nor responded to the present Motion.  Pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court entered default against all Defendants on August 31, 2012.  *See Entry of Default* [#15].  On November 1, 2012, Defendant O. Scott filed a one-page letter responding to the Motion [#29] which was entered on the docket as her answer.

## I.  Factual and Procedural Background

According to the Complaint, Plaintiffs are form setters and finishers who worked on the Denver Housing Authority's Mariposa Phase 2 housing development project (the "Mariposa Project") as employees of Defendant SSC from March through May of 2012. *See Compl.* [#1] at 1.  Plaintiffs allege that they entered into oral contracts for employment with Defendants and that Defendants breached those contacts by not paying the agreed-upon rates.  *Id.* at 19-20.  Four of the Plaintiffs allege the existence of an oral contract but do not specify the agreed-upon rate of pay.  Instead, they rely on the minimum rates of pay dictated by federal statute to determine their damages because the hourly rates offered to Plaintiffs could not lawfully have been less than the statutory minimum rates. *Id.* at 20.  Plaintiff Barreras alleges that Defendants agreed to pay him $17.00 per hour for his labor. *Id.* at 11.  In total, Plaintiffs seek money damages, costs, and fees totaling $28,086.14. *Memo. of Law* [#20-1] at 1.

Plaintiffs bring the following claims against Defendants: (1) failure to pay the applicable minimum wage required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, (the "FLSA"); (2) failure to pay the applicable overtime wage rate required by the FLSA; (3) breach of an oral contract; and (4) unjust enrichment. *Compl.* [#1] at 16-22.

2

In support of these claims, Plaintiffs allege that the Mariposa Project "is funded in part by the federal government and work performed on the project is therefore subject to the wage requirements of the Davis-Bacon Act. 40 U.S.C. § 3141 *et seq.*" *Id.* at 9.  Plaintiffs further allege that the work they performed on the Mariposa Project is also subject to the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 3701 *et seq. Id.* at 10.  As alleged in the Complaint, "[t]he federal Contract Work Hours and Safety Standards Act requires that all laborers or mechanics employed by any contractor or subcontractor on any covered contract must be paid 'at a rate not less than one and one-half times the basic rate of pay, for all hours worked in excess of 40 hours in the workweek.'" *Id.* (quoting 40 U.S.C. § 3702(a)).  According to Plaintiffs, they were employed by Defendants to work on the Mariposa Project for various lengths of time during the period March 29, 2012 through May 1, 2012. *Id.* at 10-11.  Plaintiffs allege that the amounts Defendants paid them for their work on the Mariposa Project are less than the amounts required pursuant to the above-mentioned statutes.  In the Memorandum of Law in Support of Plaintiffs' Motion for Entry of Default Judgment [#20-1], Plaintiffs detail the amount of monetary damages they allege they are owed by Defendants, which total $6,014.62. *Memo. of Law* [#20-1] at 29.  Plaintiffs further seek attorney's fees and costs in the amount of $16,379.00. *Id.* at 29.

Plaintiffs initiated this lawsuit on June 4, 2012 [#1].  On June 14, 2012, Plaintiffs filed a Return of Service by a private process server for each of the Defendants.  *See Returns of Service* [##9, 10, 11].  The server stated that he personally served Defendant L. Scott, the registered agent for Defendant SCC, at his place of residence which is also Defendant O. Scott's place of residence and the address that appears on her November 1, 2012 letter to the Court [#29]. *See id.*  No attorney entered an appearance on behalf of any of

3

Defendants.  Further, no answer or other response has been filed by Defendant SCC or Defendant L. Scott.

On August 28, 2012, Plaintiffs filed a Motion for Entry of Default [#13].  On August 30, 2012, Plaintiffs filed the Affidavit of Andrew H. Turner in support of their Motion for Entry of Default [#14].  On August 31, 2012, the Clerk of Court entered default as to all Defendants [#15].  On September 12, 2012, Plaintiffs filed the Motion [#20].  Defendants SCC and L. Scott have failed to respond to the entry of default or to the Motion.  On November 1, 2012, O. Scott responded to the Motion with a one-page letter [#29] which was docketed as her answer.

## II. Analysis

Pursuant to Fed. R. Civ. P. 55(a), default may enter against a party who fails to appear or otherwise defend the case brought against it.  However, even after an entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment."  *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (citations omitted).  "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  *Id.* at *2 (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

### A.    Jurisdiction

In determining whether the entry of default judgment is warranted here, the Court must first consider whether the Court has subject matter and personal jurisdiction.  *Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997)*; Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986).  The Court must do so in

consideration of the well-established law that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *Williams*, 802 F.2d at 1203.

### 1.     Subject Matter Jurisdiction

Plaintiffs assert that the Court has subject matter jurisdiction over this lawsuit based on federal question jurisdiction in accordance with their claims pursuant to the FLSA. *See Compl.* [#1] at 2.   Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs' first and second causes of action arise under the FLSA, a federal statute. *Id.* Therefore, the action arises under the laws of the United States, and the Court may exercise subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

Plaintiffs request that the Court exercise supplemental jurisdiction over their state law claims of breach of contract and unjust enrichment pursuant to 28 U.S.C. § 1367(a). *Compl.* [#1] at 3.     Section 1367(a) prescribes that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a). "A claim is part of the same case or controversy if it derives from a common nucleus of operative fact." *Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010) (internal quotation omitted). The Court has no question as to its subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. § 1331, nor as to whether the state law claims arise from the same facts as the claims under the FLSA. Accordingly, the Court is satisfied that it may exercise subject

matter jurisdiction over this case, inclusive of the state law claims, pursuant to 28 U.S.C. § 1367(a).

### 2.    Personal Jurisdiction

Plaintiffs bear the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773. As further explained below, in making a determination on a motion for default judgment, the Court accepts the well-pled allegations of Plaintiff's Complaint as true. This deferential pleading standard does not extend to statements of legal conclusion couched as fact. *Cf. Miller v. Kelly*, No. 10-cv-02132-CMA-KLM, 2010 WL 4684029, at *4 (D. Colo. Nov. 12, 2010) (citations omitted) ("While the Court accepts Plaintiff's well-pled allegations as true for the purpose of establishing personal jurisdiction over Defendant . . . it accords no deference to Plaintiff's conclusory and wholly unsupported allegations.").

The Court must first address the adequacy of service of process on Defendant. *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010). In the Complaint, Plaintiffs assert that Defendant SCC is a Colorado limited liability company. *Compl.* [#1] at 5. Rule 4(h) of the Federal Rules of Civil Procedure applies to service of process on corporations. That Rule states that a domestic corporation may be served "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by

law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B).  On June 14, 2012, Plaintiffs filed a Return of Service demonstrating that a private process server personally served Defendant L. Scott, the registered agent for Defendant SCC.  *See Return of Service* [#11].  That same day, Plaintiff filed a Return of Service demonstrating that Defendant L. Scott was personally served and accepted service on behalf of Defendant O. Scott at their joint residence [##9, 10].  Because Plaintiff served the registered agent for Defendant SCC, and personally served Defendant L. Scott who accepted service on behalf of himself and his wife, Defendant O. Scott, at their joint residence, the Court is satisfied that Plaintiffs have used due diligence in serving Defendants.

Regarding personal jurisdiction, "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773.  Defendants L. Scott's and O. Scott's joint residence and Defendant SCC's principal place of business are all located in Aurora, Colorado, and the alleged statutory violations took place within the District of Colorado.  *Compl.* [#1] at 5-8.  Therefore, the Court is satisfied that it may exercise personal jurisdiction over Defendants.

## B.    Entry of Default

As a threshold issue, the Court examines whether default was entered properly in this case against Defendants.  Plaintiff initiated this lawsuit on June 4, 2012 [#1].  On June 14, 2012, Plaintiff filed Returns of Service by a private process server for all Defendants. *See Returns of Service* [##9, 10, 11].  The server stated that he personally served Defendant L. Scott, the registered agent for Defendant SCC, at the joint residence of Defendants L. Scott and O. Scott.  *See id.*  No attorney entered an appearance on behalf

7

of Defendants.  Further, no answer or other response has been filed by Defendants SCC or L. Scott.  On August 28, 2012, Plaintiff filed a Motion for Entry of Default [#13] as to all Defendants.  On August 31, 2012, the Clerk of Court entered default as to all Defendants [#15].  Defendants SCC and L. Scott have failed to respond to the entry of default.

On October 15, 2012, Plaintiffs' counsel filed an affidavit clarifying that five days after he submitted his affidavit in support of the Motion, O. Scott "telephoned my office in response to the multiple letters, FAXes, voicemails and e-mails I had sent all Defendants regarding this matter." *Aff. of Andrew H. Turner* [#26] at 2.  He further states that he urged O. Scott "to obtain counsel and advised her of the motion for entry of default judgment pending against all Defendants." *Id.*  According to the affidavit, Defendant O. Scott "indicated that she might note an appearance to defend against this action in her individual capacity."  On November 1, 2012, Defendant O. Scott filed a letter [#29] stating that she is "waiting for the final divorce decree for the Dissolution of [her] Marriage" to Defendant L. Scott. *Letter* [#29] at 1.  She further states that she "is not responsible for any debt owned by" Defendant L. Scott or Defendant SCC because "all the debts belonging to Mr. Scott and Scott's Concrete Contractor, LLC and all personal debt of Mr. Scott" are part of the divorce settlement agreement. *Id.*

Defendant O. Scott's letter constitutes an appearance in the case. *See United States v. McCoy*, 954 F.2d 1000, (5th Cir. 1992) (holding that letter from defendant asserting four defenses to constitute an appearance "for purposes of Rule 55(b)(2)'s [seven]-day notice requirement."); *Johnson v. Orkin, LLC*, 286 F.R.D. 337, 338 (N.D. Ill. 2012) (finding counsel's attendance at status hearing to constitute an appearance for purposes for Fed. R. Civ. P. 55(b)(2)); *Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-

CV-64 TS, 2012 WL 3489400, at *4 (D. Utah Sept. 1, 2010) (finding that letter objecting to venue constituted an appearance because it was "an affirmative act evidencing knowledge and an accurate understanding of the suit").  However, O. Scott's letter was filed more than two months after the Clerk of Court entered default as to all Defendants [#15].  Accordingly, Defendant O. Scott's appearance is only relevant for purposes of analyzing the merits of Plaintiffs' Motion.  Furthermore, because the Motion was filed prior to Defendant O. Scott's appearance, Plaintiffs were not required to serve Defendant O. Scott with written notice seven days prior to filing the Motion. *See* Fed. R. Civ. P. 55(b)(2).  Defendants SCC and L. Scott have "failed to plead or otherwise defend" this lawsuit.  *See* Fed. R. Civ. P. 55(a); *see State Res. Corp. v. Sirios*, 10-cv-00243-PAB-MJW, 2011 WL 318754, at *2 (D. Colo. Jan. 28, 2011) (holding that entry of default was proper when "[d]efendant's failure to respond [had] thwarted the ability of the Court to resolve the matter on the merits").  Accordingly, the Court finds that the entry of default against all Defendants was proper.

## C.    Default Judgment

After confirming the propriety of the entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co.*, 2008 WL 793606 at *1 (citations omitted).  "'[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.'" *In Re Rains*, 946 F.2d 731, 733-34 (10th Cir. 1991) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir.1970)).

9

"[A] party is not entitled to a default judgment as of right; rather the entry of default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co.*, 2008 WL 793606 at *2 (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).  Where the complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate. *Id.* (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 430 F. Supp. 1138, 1143 (E.D.N.C. 1986)).

Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation.  The Court deems the well-pled facts (as opposed to merely conclusory statements) of the Complaint in this matter to be true. *Id.* at *1 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Id.*  When assessing damages, however, the Court must establish the amount that the moving party is entitled to recover. *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).  Whether to conduct a hearing for the purpose of ascertaining damages is discretionary; the Court need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Held v. Shelter Sys. Group Corp.*, No. 93-1225, 1994 WL 47157, at *1 (10th Cir. 1994) (unpublished) (citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)).

### 1.    Plaintiffs' FLSA Claims

Two of Plaintiffs' claims against Defendants in this case arise under the FLSA. *Compl.* [#1] at 1-2.  These claims are supported by the well-pled facts in Plaintiff's Complaint [#1 at 8-15] and by the FLSA Consent Forms signed by Plaintiffs Horne [#1-1],

10

Barreras [#1-2], Jones [#1-3], La Mar [#1-4], and Lockett [#1-5].

The FLSA was enacted to eradicate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and the general well-being of workers." 29 U.S.C. § 202(a); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (stating that the purpose behind the FLSA is to "protect all covered workers from substandard wages and oppressive working hours.") (quoting *Barrentine v. Arkansas-Best Fright Sys., Inc.*, 450 U.S. 728, 739 (1981); citing 29 U.S.C. § 202(a). To further that goal, the FLSA sets minimum wage standards, overtime wage standards, maximum hours standards, and other requirements for employers. *See* 29 U.S.C. § 201 *et seq.* In part, the FLSA requires employers to pay employees a minimum wage of $7.25 and, for hours worked in excess of forty per week, at a rate of one and one-half times the employees' regular wages. *See* 29 U.S.C. §§ 206(a), 207(a).

According to the Complaint, Plaintiffs are form setters and finishers who worked on the Mariposa Project as employees of Defendant SSC from between March and May of 2012. *See Compl.* [#1] at 1. Plaintiffs allege that they entered into oral contracts for employment with Defendants and that Defendants breached those contacts by not paying the agreed-upon rates. *Id.* at 19-20. Four of the Plaintiffs allege the existence of an oral contract but do not specify the agreed-upon rate of pay. Instead, they rely on the minimum rates of pay dictated by the FLSA to determine their damages for their claims under the FLSA because the hourly rates offered to Plaintiffs could not lawfully have been less than the statutory minimum rates. *Id.* at 20. Plaintiff Barreras alleges that Defendants agreed

11

to pay him $17.00 per hour for his labor.[2] *Id.* at 11.  In total, Plaintiffs seek $4,051.32 under the FLSA for underpaid wages: Plaintiff Horne seeks $389.82, Plaintiff Barreras seeks $2,226.00, Plaintiff Jones seeks $565.50, Plaintiff La Mar seeks $290.00, and Plaintiff Lockett seeks $580.00. *Memo. of Law* [#20-1] at 29.  Plaintiffs ask the Court to enter judgment for these amounts jointly and severally against all Defendants. *Id.* at 10.

In support of these claims, Plaintiffs allege that the Mariposa Project "is funded in part by the federal government and work performed on the project is therefore subject to the wage requirements of the Davis-Bacon Act. 40 U.S.C. § 3141 *et seq.*" *Id.* at 9.  Plaintiffs further allege that the work Plaintiffs performed on the Mariposa Project is also subject to the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 3701 *et seq. Id.* at 10.  As alleged in the Complaint, "[t]he federal Contract Work Hours and Safety Standards Act requires that all laborers or mechanics employed by any contractor or subcontractor on any covered contract must be paid 'at a rate not less than one and one-half times the basic rate of pay, for all hours worked in excess of 40 hours in the workweek.'" *Id.* (quoting 40 U.S.C. § 3702(a)).  According to Plaintiffs, they were employed by Defendants to work on the Mariposa Project for various lengths of time during the period March 29, 2012 through May 1, 2012. *Id.* at 10-11.  Plaintiffs allege that the amounts Defendants paid them for their work on the Mariposa Project are less than the amounts required pursuant to the above-mentioned statutes and the FLSA. *Compl.* [#1] at 17-19.

---

[2] For purposes of calculating the overtime rates of pay under the FLSA, the agreed-upon rate of pay is the "regular rate" of pay. *See Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."); 29 U.S.C. § 207(a)(2) (setting overtime rate "at a rate not less than one and one-half times the regular rate at which he is employed").

Plaintiffs further allege that Defendant O. Scott exercises "day-to-day operational control over" and is the principal manager of Defendant SCC, "entered the contract work" for which Plaintiffs bring their claims, administers payroll for Defendant SCC, assigned Plaintiffs their wage rates, and fielded and rejected Plaintiffs' complaints regarding non-payment of wages. *Id.* at 13-14.  With regard to Defendant L. Scott, Plaintiffs allege that he "participated in setting Plaintiffs' hours of work," "hired Plaintiffs," "assigned job tasks to Plaintiffs," supervised Plaintiffs' work, collected Plaintiffs' "timesheets for the preparation of certified payroll documents required by 40 U.S.C. § 3145(a)," "exercises day to day operational control over" Defendant SCC, and is a member of Defendant SCC and possesses "a significant ownership interest in that company." *Id.* at 12.  As there is nothing in the record to rebut these allegations[3] which are presumed true, Plaintiffs have demonstrated a legal and factual basis for the entry of default judgment with regard to their claims under the FLSA.  Further, "[c]ourts have consistently held that a corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages is an 'employer' along with the corporation, and is jointly and severally liable for the payment of wages." *Schneider v. Landvest Corp.*, No. 03 CV 02474 WYD PAC, 2006 WL 322590, at * 22 (D. Colo. Feb. 9, 2006).  Consequently, joint and several liability is proper as to Plaintiffs' claims pursuant to the FLSA.  Accordingly, the Court **RECOMMENDS** that default judgment be entered against all Defendants on Plaintiffs' claims pursuant to 29 U.S.C. §§ 206(a) and 207(a).

---

[3]Defendant O. Scott's November 1, 2012 letter [#29] fails to address any of Plaintiffs' factual allegations or legal analyses.  Instead, the letter merely alerts the Court to the Scotts' pending divorce.

2.     **Plaintiffs' Breach of Contract Claim**[4]

Plaintiffs' third claim against Defendant SCC seeks damages for breach of an oral

employment contract for each of Plaintiffs. *Compl.* [#1] at 19-21.  This claim is supported

by the facts alleged in Plaintiffs' Complaint. *Id.* at 8-15.  Plaintiffs seek a total of $1,963.30

from Defendant SCC for breach of contract:   Plaintiff Horne seeks $1,100.56, Plaintiff

Barreras seeks $837.00, Plaintiff Jones seeks $10.14, Plaintiff La Mar seeks $5.20, and

Plaintiff Lockett seeks $10.40. *Memo. of Law* [#20-1] at 29.

To prevail on a state law claim of breach of oral contract, Plaintiffs must "prove all

the elements of the formation and breach of [that] contract." *Tuttle v. ANR Freight Sys.,*

*Inc.*, 797 P.2d 825, 827 (Colo. App. 1990) (citing *Continental Air Lines, Inc. V. Keenan*, 731

P.2d 708 (Colo. 1987).    Those elements are: "(1) the existence of a contract; (2)

performance by the plaintiff . . .; (3) failure to perform the contract by the defendants; and

(4) resulting damages to the plaintiff." *Saturn Sys., Inc. V. Militare*, 252 P.3d 516, 529

(Colo. App. 2011).

Here, Plaintiffs allege that Defendant SCC, through its principles, promised to pay

them at least at the statutory rates required by the Davis-Bacon Act for their work relating

to the Mariposa Project. *Compl.* [#1] at 1, 9-12, 20-21.  Plaintiffs allege that they "performed

substantial labor" and that they "performed their contract with Defendant by providing

labor." *Id.* at 21.  Plaintiffs further allege that "Defendant failed to perform the parties' oral

contract by failing to pay Plaintiffs at the specified wage rates for the labor Plaintiffs

---

[4]The underlying facts pled in support of the FLSA claims and the breach of contract
claims are identical.  Plaintiffs first seek damages under the FLSA and then request the
difference (since the Davis-Bacon Act wage rates are greater than the minimum set by the
FLSA) through their breach of contract claim.

performed." *Id.*  Finally, Plaintiffs allege that they suffered damages as a result of the breach and in support of the Motion point to the rates required under the Davis-Bacon Act. *Id.*, *Memo. of Law* [#20-1] at 12-30.

The Secretary of Labor has promulgated extensive regulations regarding enforcement of the Davis-Bacon Act. *Johnson v. Prospect Waterproofing Co.*, 813 F.Supp.2d 4, 6 (D.D.C. 2011) (quotation omitted).   The Davis-Bacon Act provides that if the contractor fails to pay the minimum wages specified in the government contract, the government's contracting officer may withhold from its payment to the contractor, the amount "necessary to pay the laborers . . . the difference between the contract wages and those actually paid." *Id.* at 7 (citing 40 U.S.C. § 3142(c)(3).  If the withheld amounts are insufficient to reimburse the laborers, then the Davis-Bacon Act provides for the laborers to bring a civil action. 40 U.S.C. § 3144(a)(2).  "But, this purely financial remedy is available only after there has been an administrative determination that some money is owed and that insufficient funds have been withheld to compensate the affected laborer." *Id.* (quoting *United States ex rel. Bradbury v. TLT Constr. Corp.*, 138 F.Supp.2d 237, 241 (D.R.I. 2001)).

Although the Tenth Circuit has not yet addressed this question, many federal courts have held that the Davis-Bacon Act does not contain an implied right of action to recover back wages. *See, e.g. Grochowski v. Phoenix Constr.*, 318 F.3d 80, 85-86 (2d Cir. 2003); *Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 676 (9th Cir. 1998); *Bane v. Radio Corp. of Am.*, 811 F.2d 1504, 1987 WL 35851, at *1 (4th Cir. Feb. 2, 1987); *Weber v. Heat Control Co.*, 728 F.2d 599, 599-600 (3d Cir. 1984); *United States ex rel. Glynn v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1317 (5th Cir. 1980); *cf.*

15

*University Research Ass'n, Inc. v. Contu*, 450 U.S. 754, 772-73 (1981) (The language of Section 1 of the Davis-Bacon Act "provides no support for the implication of a private remedy."); *Operating Engineers Local Union No. 3 of Intern. Union of Operating Engineers, AFL-CIO v. Bohn*, 73.7 F.2d 860, 863 (1984) (briefly noting "the Supreme Court's refusal to imply a private right of action under the [Davis-Bacon] Act" in its analysis of a Section 1983 claim.).  In certain instances, some courts have held that a private right of action does exist under the Davis-Bacon Act. *See, e.g., McDaniel v. Univ. Of Chicago*, 548 F.2d 689, 695 (7th cir. 1977); *Grzeskowiak v. Dakota Bridge Builders*, 241 F.Supp.2d 1062, 1064-65 (D.N.D. 2003); *Hartt v. United Constr. Co.*, 655 F.Supp. 937, 939 n.2 (W.D. Mo. 1987), *aff'd*, 909 F.2d 508 (8th Cir. 1990).  This Court declines to part with the reasoning of the vast majority of federal courts that have addressed this issue and concluded that the Davis-Bacon Act does not contain such an implied private right of action.

Here, because the Davis-Bacon Act does not contain an implied private right of action under which Plaintiffs may recover back wages, Plaintiffs' state law claim is simply an "indirect attempt[ ] at privately enforcing the prevailing wage schedules contained in the [Davis-Bacon Act]."  *Grochowski*, 318 F.3d at 86.  Instead of alleging an agreed-upon rate of pay and damages resulting from Defendants' failure to pay that rate, Plaintiffs look to federal law to supply the alleged contract rate.  However, as noted above, this is improper.  In the absence of proper allegations regarding the contract terms and damages caused by its breach, Plaintiffs' breach of contract claim fails.  Accordingly, the Court **RECOMMENDS** that Plaintiffs' request for default judgment against Defendant SCC on Plaintiffs' breach of contract claim be **DENIED**, and that Plaintiffs' breach of contract claim be **DISMISSED**

**without prejudice** for failure to state a claim.

> **3.     Plaintiffs' Unjust Enrichment Claim**

In the Motion, Plaintiffs do not address their fourth claim for unjust enrichment presumably because any amounts Plaintiffs seek through their unjust enrichment claim would be redundant of their FLSA and breach of contract claims.  Accordingly, the Court does not address the merits of Plaintiffs' fourth claim.

> **4.     Damages**

Actual proof must support any default judgment for money damages.  *See Klapprott v. United States*, 335 U.S. 601, 611-12 (1949).   The amount of damages must be ascertained before a final default judgment can be entered against a party. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo.1984) (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2692 at 465-66 (1983)).   This rule prevents a plaintiff who obtains a default judgment from receiving more in damages than is supported by actual proof.  *See Klapprott*, 335 U.S. 611-12.  Further, pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  In the Motion, Plaintiffs detail the total damages sought by each of them. *Memo. of Law* [#20-1] at 12-30.

> **a.     Monetary Damages**

Since Plaintiffs failed to state a claim for breach of contract, the Court only analyzes damages resulting from Plaintiffs' FLSA claims.  The FLSA establishes the minimum rates of pay and "time-and-a-half" for time worked over forty hours per week.  Pursuant to 29

17

U.S.C. § 216(b), "[a]ny employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

In total, Plaintiffs seek $4,051.32 under the FLSA for underpaid wages: Plaintiff Horne seeks $389.82, Plaintiff Barreras seeks $2,226.00, Plaintiff Jones seeks $565.50, Plaintiff La Mar seeks $290.00, and Plaintiff Lockett seeks $580.00. *Memo. of Law* [#20-1] at 29.  Horne states that he worked 174.5 hours for Defendants on the Mariposa Project, two of which were overtime hours, and that he was paid a total of $1,100 for his work. *Aff. of Michael Horne* [#12-2] at 2.  In the Complaint, Plaintiffs allege that Barreras "was promised an hourly wage rate of $17.00." *Compl.* [#1] at 11.  Barreras claims that he worked 226 hours for Defendants on the Mariposa Project, 26 of which were overtime hours, and that he was paid a total of $1,000 for his work.  *Memo. of Law* [#20-1] at 14. Jones states that he worked 39 hours for Defendants on the Mariposa Project and that Defendants never paid him for his work. *Aff. of Jershaun Jones* [#12-3] at 2.  La Mar states that he worked 20 hours for Defendants on the Mariposa Project and was never paid for his work. *Aff. of Corey E. La Mar* [#12-4] at 2.  Lockett states that he worked 40 hours for Defendants on the Mariposa Project and was never paid for his work. *Aff. of Deshaun Lockett* [#12-5] at 2.

Damages for Plaintiffs Jones, La Mar, and Lockett are calculated by multiplying the FLSA minimum wage ($7.25 per hour), 29 U.S.C. § 206(a), by the number of hours worked. That number is then multiplied by two pursuant to 29 U.S.C. § 216(b).  The mathematical

18

calculations result in the following amounts: $565.50 for Jones, $290.00 for La Mar, and $580.00 for Lockett.  Plaintiff Horne is eligible for two hours at one and one-half times the minimum wage pursuant to 29 U.S.C. § 207(a).  Thus, Horne is entitled to 172.5 hours at the minimum rate of $7.25 and 2 hours at the overtime rate of $10.86, or $1,250.63 plus $21.75 which is $1,272.38 total.  Deducting the $1,100.00 Horne was paid by Defendants, the resulting amount is $172.38.  Multiplying the total by two pursuant to 29 U.S.C. § 216(b), Horne's total damages are $344.76.  Plaintiff Barreras is entitled to 200 hours at the minimum wage and 26 hours at the overtime rate of $25.50[5], or $1,450.00 plus $663.00 which is $2,113.00.00 total.  Deducting the $1,000.00 Barreras was paid by Defendants, the total is $1,1113.00.  Multiplying the total by two pursuant to 29 U.S.C. § 216(b), Barreras' total damages are $2,226.00.

Plaintiffs ask the Court to enter judgment jointly and severally against all Defendants. *Id.* at 10.  "Courts have consistently held that a corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages is an 'employer' along with the corporation, and is jointly and severally liable for the payment of wages." *Schneider*, 2006 WL 322590, at *22.  Accordingly, joint and several liability is proper as to Plaintiffs' claims pursuant to the FLSA.

Therefore, the Court **RECOMMENDS** that judgment be entered in favor of Plaintiffs and against Defendants jointly and severally as follows: in favor of Plaintiff Horne for

---

[5] For purposes of calculating the overtime rates of pay under the FLSA, the agreed-upon rate of $17.00 per hour is the "regular rate" of pay. *See Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."); 29 U.S.C. § 207(a)(2) (setting overtime rate "at a rate not less than one and one-half times the regular rate at which he is employed").

$344.76, in favor of Plaintiff Barreras for $2,226.00, in favor of Plaintiff Jones for $565.50, in favor of Plaintiff La Mar for $290.00, and in favor of Plaintiff Lockett for $580.00.

### b. Attorney's Fees and Costs

Plaintiff also requests the costs of this proceeding and reasonable attorney's fees. *See Compl.* [#1] at 24-28.  Pursuant to 29 U.S.C. § 216(b), Plaintiffs can recover attorney's fees and costs: "[t]he court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see also Wright v. U-Let-Us Skycap Servs., Inc.*, 648 F.Supp. 1216, 1218 (D. Colo. 1986) ("Payment of attorney fees and costs to a prevailing party in an FLSA action is *mandatory.*").  In addition, pursuant to D.C.COLO.LCivR 54.3B., a party seeking an award of expenses must provide "a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed; and a summary of the relevant qualifications and experience."  Plaintiffs submitted two declarations, signed under penalty of perjury, authored by Attorney Andrew H. Turner ("Turner") and Attorney Naomi Y. Perera ("Perera").  *See generally*, *Aff. of Andrew H. Turner* [#20-3]; *Aff. of Naomi Y. Perera* [#20-4].  The affidavits include itemized lists of fees incurred, the hourly rates charged by counsel, and their experience.  Plaintiffs seeks a total of $15,954 in attorney's fees and $425 for costs incurred for initiating and prosecuting this action. *Memo. of Law* [#20-1] at 24-28; *Aff. of Andrew H. Turner* [#20-3] at 2; *Aff. of Naomi Y. Perera* [#20-4] at 3.

Turning to the reasonableness of Attorney Turner's and Attorney Perera's hourly rates, the party seeking attorneys' fees bears the burden of producing "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Attorney Turner lists a billable rate of $280 per hour and Attorney Perera lists a billable rate of $200 per hour. In support of their billable rates, Plaintiffs' attorneys submitted: affidavits detailing their work experience [##20-3, 20-4], affidavits from other attorneys practicing in the area of labor and employment law attesting to the reasonableness of the rates billed in this case [##20-6, 20-10], and an article from the National Law Journal comparing billing rates across the United States [#20-8]. The Court finds that the hourly rates of $250.00 and $200.00 are reasonable in this jurisdiction for counsel with Attorney Turner's and Attorney Perera's experiences and qualifications. *See Shrader v. Beann*, No. 10-cv-01881-REB-MLW, 2012 WL 527480, at *3 (D. Colo. Feb. 12, 2012) (finding that an hourly rate of $425 for senior attorneys in the Denver area is reasonable); *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, No. 09-cv-00717-CMA-BNB, 2011 WL 3568165, at *8-9 (D. Colo. Aug. 15, 2011) (same)).

A party seeking an award of attorneys' fees must demonstrate that the expenses it seeks are reasonable. *See Dewey v. Hewlett Packard Co.*, No. 05-cv-01482-REB-MJW, 2007 WL 707462, at *1 (D. Colo. Mar. 5, 2007). Therefore, counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Generally, the starting point for any calculation of reasonable attorneys' fees is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017–18 (10th Cir. 1996). The Court is not

required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436–37.  In determining the reasonableness of Plaintiffs' request for attorney's fees, the Court should: "(1) give special scrutiny to time entries exceeding six to seven hours for a single attorney on any given day, (2) give special scrutiny to each specific task which may appear excessive, (3) determine whether the tasks sought to be charged to the adverse party would normally be billed to a paying client, (4) deny compensation for duplication of services, and (5) deny compensation for 'non-productive' time, or time spent on matters not necessary or related to the case at hand." *Wright*, 648 F.Supp. at 1223.  As shown through the detailed time entries included with the attorney affidavits, Plaintiffs' attorneys billed a total of 58.95 hours on this matter, which included: research, conversations and interviews of clients and witnesses, drafting pleadings, and calculating damages.

Plaintiffs are the prevailing party against Defendant and, therefore, are entitled to be compensated.  *See* 29 U.S.C. § 216(b).  The Court exercises its "discretion in making this equitable judgment" and does not "apportion the fee award mechanically" by considering each claimed expense and determining its reasonableness overall.  *Hensley*, 461 U.S. at 436–40 (holding that the Court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.*, 908 F.2d 675, 684–85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute).

Based on the undersigned's private and judicial experience, Plaintiffs' pleadings, and

careful consideration of the affidavits and the issues underlying this matter, the Court finds that Attorney Turner's and Attorney Perera's claimed fees are reasonable here. *See, e.g.*, *Onesource Commercial Prop. Servs., Inc. v. City & Cnty. of Denver*, No. 10-cv-02273-WJM-KLM, 2011 WL 3583398, at \*2 (D. Colo. Aug. 12, 2011).   Accordingly, the Court **RECOMMENDS** finding that: (1) Attorney Turner's hourly compensation of $250.00 is reasonable; (2) Attorney Perera's hourly compensation of $200.00 is reasonable; (3) the 52.05 hours of attorney time noted by Attorney Turner are reasonable; (4) the 6.9 hours of attorney time noted by Attorney Perera are reasonable;  (5) the expenses incurred by Plaintiffs, as outlined in the Memorandum of Law [#20-1], are reasonable; and (6) Plaintiffs are entitled to an award of $15,954.00 in attorney's fees and $425.00 in costs they incurred as a result of their lawsuit against Defendants.

### III.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Plaintiffs' Motion [#20] be **GRANTED in part** and **DENIED in part**.  To the extent the Motion seeks entry of a default judgment on behalf of proposed opt-in plaintiffs Leonard P. Streifel, Esteban Villalobos, and Luis Morales, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.  The Court respectfully **RECOMMENDS** that Plaintiffs' breach of contract claim be **DISMISSED without prejudice** for failure to state a claim.  The Court respectfully **RECOMMENDS** that the remainder of the Motion be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that judgment be entered in favor of Plaintiffs in the following amounts against Defendants jointly and severally:

- •     Plaintiff Michael D. Horne: $344.76;

- Plaintiff Joseph Barreras: $2,226.00;

- Plaintiff Jershaun Jones: $565.50;

- Plaintiff Corey E. La Mar: $290.00; and

- Plaintiff Deshaun Lockett: $580.00.

IT IS FURTHER **RECOMMENDED** that Plaintiffs be awarded costs and fees in the amount of $16,379.00, and that judgment be entered in favor of Plaintiffs and against Defendants, jointly and severally, in that amount.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 24, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

24